# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 11-cr-53 |
| | ) | |
| MICHELLE JIMENEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER**

Presently before the Court for disposition are numerous pre-trial motions (Document Nos. 591, 592, 594, 596) which have been filed by Michelle Jimenez, the sole remaining Defendant in this large heroin conspiracy case.[1] The government, with the Court's permission, filed an Omnibus Response to the motions filed by all Defendants (Document No. 655) and the motions filed by Jimenez are ripe for disposition.

Factual and Procedural Background

The charges in this case stem from a lengthy investigation of heroin trafficking. Agents received information from confidential sources regarding heroin purchases dating back to January 2008. In June 2009, June 2010 and July 2010, agents utilized confidential sources to conduct controlled purchases of heroin. Beginning on August 31, 2010, the government obtained Title III wiretap intercepts on cellular telephones utilized by Defendants Terrell Bennett, James Green, Robert Vaughns, Michelle Jimenez and others. Numerous authorizations to extend and broaden the wiretap intercepts were obtained.

---

[1] All outstanding discovery and pretrial motions filed by Defendants who have pled guilty are **DENIED AS MOOT**.

On March 1, 2011, the government filed a one-count indictment in Criminal No. 11-53, which charged nine Defendants, James Green, Terrald Bennett, Richard Hutson, Robert Vaughns, Bonita Bey, Brandon Massie, Jose Hidalgo-Mendoza, Michelle Jimenez and Tyson Barron, with conspiracy to distribute and possess with intent to distribute one (1) kilogram or more of heroin, from March 2009 through April 2011, in violation of 18 U.S.C. § 846. On July 15, 2011, the government filed a 3-count Superseding Indictment, which named nine additional persons as Defendants. Count 1 of the Superseding Indictment charges seventeen Defendants (including Jimenez) with conspiracy to distribute and possess with intent to distribute one (1) kilogram or more of heroin, from March 2009 through April 2011, in violation of 18 U.S.C. § 846. Count 2 of the Superseding Indictment charges Defendants Bennett and Jimenez with money laundering, in violation of 18 U.S.C. § 1956(h).[2] As of this date, sixteen of the eighteen Defendants have pled guilty and the seventeenth Defendant has indicated to the Court that a plea of guilty will be entered in the near future.

Legal Background

The principles of law governing an alleged drug conspiracy can be difficult to understand and appreciate. A review of the Third Circuit Model Jury Instructions regarding the crime of "Conspiracy" illustrates the vast scope of the liability to which even a minor or tangential member may be exposed. "Conspiracy" is a criminal offense separate and apart from the underlying heroin distribution offenses that were the alleged objectives of the conspiracy charged

---

[2]Count 3 also charges money laundering, but does not name Jimenez.

in this case. It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they do not ultimately achieve their objective.

A conspiracy is a type of criminal partnership. If this case goes to trial, the jury will be instructed that the government must prove each of the following elements beyond a reasonable doubt in order to establish the crime of conspiracy to distribute and possess with intent to distribute a controlled substance:

1. That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;

2. That Defendant was a party to, or member of, that agreement; and

3. That Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy. The government does <u>not</u> have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does <u>not</u> have to prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objective, or agreed to all the details, or agreed as to what the means were by which the objective would be accomplished. The government is <u>not</u> required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons

3

in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward those goals or objectives. However, the government does <u>not</u> have to prove that a Defendant knew everything about the conspiracy or that he/she knew everyone involved in it, or that he/she was a member from the beginning. The government also does <u>not</u> have to prove that he/she played a major or substantial role in the conspiracy. On the other hand, evidence which shows that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he/she was a member of the conspiracy, even if he/she approved of what was happening or did not object to it.

The acts or statements of <u>any</u> member of a conspiracy are treated as the acts or statements of <u>all</u> the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, the jury may consider as evidence against a Defendant any acts done or statements made by <u>any</u> members of the conspiracy, during the existence of and to further the objectives of the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his/her knowledge.

With that background, the Court addresses the pending motions.

1.  Motion to Compel Disclosure of Material Subject to Rule 807 (#591)

This motion appears to be filed on behalf of "Mr. Bursey." The Court presumes that this is a typographical error. The relief sought in the motion is to require the government to "provide adequate notice of its intention to use material" whose admissibility is subject to Fed. R. Evid. 807 (the residual hearsay exception).

The government responds that it is not presently aware of any hearsay statement(s) it will seek to admit at trial under Fed. R. Evid. 807. The government further represents that should this position change, the defendant will be notified before the commencement of trial. More generally, the government has repeatedly acknowledged its obligations under *Brady* and its progeny, *Giglio*, Federal Rules of Criminal Procedure 12 and 16, and the Jencks Act. Accordingly, the MOTION TO COMPEL DISCLOSURE OF MATERIAL SUBJECT TO RULE 807 (Document No. 591) is **DENIED WITHOUT PREJUDICE**.

2.  Motion to Suppress United States Currency (#592)

Defendant seeks to suppress $15,205.00 in cash seized by agents from a safe deposit box leased by Jimenez at PNC Bank, 4101 Butler Street, Pittsburgh, Pennsylvania. The cash was seized pursuant to a search warrant issued by United States Magistrate Judge Erwin Swearingen.

Jimenez contends that the 37-page affidavit prepared by DEA Task Force Officer Frederick Woodard, Jr. did not establish the requisite probable cause to support issuance of the search warrant, and that the "good faith exception" does not apply.

The government correctly points out that a judge's determination that there was probable cause to issue a warrant is entitled to "great deference" from a reviewing court, whose

task is limited to determining whether there was a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 236 (1984). Affidavits should be construed in a non-technical, common sense manner based on the totality of the circumstances. *Id*. The government submits that the Woodard affidavit provided probable cause to issue the search warrant because, inter alia: (1) the day before the warrant was issued, Jimenez, her live-in boyfriend Terrell Bennett, and others had been indicted by a grand jury and charged with a heroin conspiracy; (2) the affidavit summarized the investigation, including the interception of thousands of phone calls pursuant to a Title III wiretap; (3) Bennett was a key figure in the conspiracy; (4) in one intercepted phone call, Bennett told a co-conspirator that a probation officer had searched his residence at 49 Bracken Place and seized $20,000 in cash, but had failed to find another $60,000 hidden downstairs; (5) Jimenez assisted Bennett in attempting to keep the probation office away from 49 Bracken Place, such as by advising him to leave an air mattress and clothes at an apartment in her building to establish a false residence; and (6) records showed that the safe deposit box was leased, and used on numerous occasions, by Jimenez. In sum, based on his experience, agent Woodard averred that evidence of the conspiracy would likely be found in the safe deposit box. The government contends, in the alternative, that even if probable cause was insufficient, the agents were entitled to rely in "good faith" on the warrant issued by Magistrate Judge Swearingen, *see United States v. Leon*, 468 U.S. 897 (1984), such that the evidence should not be suppressed..

    The Court agrees with the government. Because the motion filed by Jimenez targets the information set forth in the four corners of the affidavit, a hearing is not necessary. Based on the totality of circumstances, the thorough and lengthy affidavit supported issuance of the search warrant. Indeed, the Court does not believe that this is a particularly difficult decision, given the

facts and circumstances of the case.  Even assuming, arguendo, that the affidavit did not establish probable cause, the agents were certainly entitled to rely in good faith on the issuance of the search warrant by the United States Magistrate Judge.  Accordingly, the MOTION TO SUPPRESS UNITED STATES CURRENCY (Document No. 592) is **DENIED**.

        3.      <u>Motion to Suppress Fruits of Search From 49 Bracken Place (#594)</u>

Jimenez also seeks to suppress various items seized by agents on March 3, 2011 from 49 Bracken Place, including $6,602.09 in cash, a 2007 BMW, a 2007 Audi, a receipt for a PNC Bank safe deposit box (the box referenced above), a Glock pistol, a money-counting machine, an ink stamp (such as those used to place logos on bags of heroin), and ten cell phones. The search was conducted pursuant to the same warrant issued by United States Magistrate Judge Swearingen, and the same underlying affidavit prepared by agent Woodard, discussed above.

Jimenez repeats essentially the same arguments set forth above in her effort to suppress the cash seized from the safe deposit box, namely, that the affidavit does not establish probable cause and that the "good faith exception" does not apply.  The government also reiterates the positions it set forth above.  Therefore, the Court reaches the same conclusion.  In accordance with the foregoing, the MOTION TO SUPPRESS FRUITS OF SEARCH FROM 49 BRACKEN PLACE (Document No. 594) is **DENIED**.

4. <u>Motion to Compel Disclosure of Alleged Prior Bad Acts (#596)</u>

The relief requested by Jimenez in this motion is disclosure of evidence purporting to reflect uncharged and/or charged misconduct by her, pursuant to Fed. R. Evid. 104, 403, 404(b) and 609. However, the primary focus of her brief is the admissibility of such evidence at trial.

The government represents that it has not yet identified the specific bad act evidence it may seek to introduce at trial – and at this time does not intend to introduce any such evidence. The government notes that it provided all Defendants with copies of their criminal records. The government further represents that it is aware of its duty pursuant to Rule 404(b) to provide notice, and that it will do so no later than two weeks prior to trial.

The Court concludes that two-week notice of any "bad act" evidence identified by the government for use at trial is reasonable. Questions of admissibility (if any) must await the more fully-developed factual context of trial. Accordingly, the MOTION TO COMPEL DISCLOSURE OF ALLEGED PRIOR BAD ACTS (Document No. 596) is **DENIED WITHOUT PREJUDICE**.

So **ORDERED** this 24th day of September, 2012.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Gregory Nescott, AUSA
Mark Sindler, Esquire